PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA 92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff and the Proposed Class

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUDITH PETTIFORD, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CONCORA CREDIT INC, a Delaware corporation,<br><br>Defendant. | '26CV0709 JES BLM<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF B&P CODE SECTION 17529.5 (UNLAWFUL SPAMMING)** |

## I. NATURE OF ACTION

1. Defendant Concora Credit Inc. (“Concora”) is a notorious and habitual violator of consumer protection laws. Specializing in credit solicitations, it promotes purported “pre-approved” and “invitation-only” credit card offers through deceptive, urgency-driven advertisements designed to mislead unwary consumers into believing they have been specially selected for immediate credit cards. In reality, the messages merely funnel recipients into a generic credit card application process.

2. Going from bad to worse, Concora is a ***relentless*** spammer. It floods consumer inboxes with unsolicited, deceptive, and unwanted messages that employ all of the tactics forbidden by California law: falsified header information, spoofed and nonsensical sender domains, deceptive subject lines, and visually identical but non-standard Unicode characters (e.g., “ o ,” “ A,” “ e ”) designed to evade email spam filters and deceive consumers.

3. Plaintiff recently received a message promoting Defendant’s credit services. The spam: (1) came from a spoofed, nonsensical address; (2) contained a forged domain untraceable to defendant; and (3) falsely framed a mass-market solicitation as a personalized “congratulations” about qualifying for a unique credit card. In short, Defendant had facially, flagrantly, and repeatedly violated California law.

4. Fortunately, California’s robust Anti-Spam Law imposes both strict liability and liquidated damages on companies like Concora that benefit from deceptive unsolicited commercial e-mail advertisements (i.e., “spam”). It dispenses with the requirement of proving actual damages, intent, or scienter, and imposes liability on advertisers for the actions of their affiliate marketers.[1]

[1] *See Hypertouch, Inc. v. ValueClick, Inc.*, 192 Cal. App. 4th 805, 829-30 (Cal. Ct. App. 2d Dist. 2011) (Section 17529.5 “impos[es] strict liability on advertisers who benefit from (and are the ultimate cause of) deceptive e-mails”); *Id.* at 822 (Section 17529.5 “does not require the plaintiff to prove that it relied on the deceptive commercial e-mail message or that it incurred damages as a result of the deceptive message”); Id at 821 (“Section 17529.5 … does not include any ‘scienter’ or intent requirement”); *Id.* at 820 (“[S]ection 17529.5 does not require the plaintiff to show that the defendant actually made a false or deceptive statement…. [B]y its plain terms, the statute is not limited to entities that

Continued on the next page

## II. JURISDICTION AND VENUE

5. Plaintiff is an individual who received spam e-mail from Defendant.

6. Defendant is a financial services company headquartered in Oregon.

7. This Court has subject matter jurisdiction of this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1332(d)(2), because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is at least minimal diversity because at least one Plaintiff and Defendant are citizens of different states. Indeed, based upon publicly available information, the class is believed to include over 10,000 members and the amount in controversy is believed to exceed $100 million.

8. Defendant is subject to jurisdiction under California's "long-arm" statute because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States" and because this lawsuit arises out of Defendant's contacts with California consumers. In fact, Defendant does so much business with California consumers that it is actually registered as a California Collection Agency. See https://about.concoracredit.com/who-we-are (noting California Collection Agency License # 10739-99).

## III. FACTUAL ALLEGATIONS

9. Plaintiff is a senior citizen and former longtime resident of San Diego, California and who travels to California frequently. She is the owner of the e-mail address ljpettiford95@yahoo.com. Plaintiff opened the e-mail account while in California and routinely accesses the e-mail account from California.

10. Defendant deliberately outsources its credit card solicitation to third-party affiliate marketers to reap the benefits of large-scale unlawful spamming. It financially incentivizes these affiliates — paying them on a per-lead or per-conversion basis — to flood inboxes with deceptive credit card offers, knowing that aggressive, non-consensual

---

actually send or initiate a deceptive commercial e-mail, but applies more broadly to any entity that advertises in those e-mails."

email campaigns generate sign-ups. These affiliates are not rogue actors; they are integral to Defendant’s customer-acquisition strategy and are compensated precisely because spam works. By structuring its marketing this way, Concora attempts to enjoy the profits of illegal email campaigns while plausibly denying responsibility for the very misconduct it knowingly authorizes, directs, and benefits from—conduct squarely prohibited by California Business & Professions Code § 17529.5.

11. Defendant, through its affiliates, relentlessly spams Plaintiff and hundreds of thousands of other Californians. Earlier this year, Plaintiff received a spam e-mail from one of Defendant’s affiliate marketers. The e-mail was from a spoofed and nonsensical address (v12tl56c@j2h.glowvento4.com). The subject line of the spam message read “Ljpett□iford, Congrats, your invitation for a car □d with a $□700 cred □it lim□it is here!”.

12. The subject line’s irregular spacing and use of visually identical but non-standard Unicode characters (e.g., “ ｏ,” “Ａ,” “ ｅ ”) is a deliberate spam technique designed to evade email filters and brand-based detection systems while still conveying to human recipients the intent of the message. This homoglyph substitution is not accidental formatting; it is a well-known method used by professional spammers to defeat keyword matching, avoid enforcement by trademark owners, and increase inbox placement. By intentionally altering common engagement phrases to appear normal to recipients but different to automated systems, Defendant demonstrated knowledge that the subject line would be likely to mislead a reasonable recipient as to the source and nature of the message. These tactics support a strong inference of scienter under Business and Professions Code § 17529.5(a)(3), as the deceptive formatting was knowingly employed to disguise the commercial nature and true origin of the email and to induce recipients to open and engage with it under false pretenses.

13. The email also contains hidden HTML code revealing multiple unrelated urgency narratives, none of which appear in the visible body of the message. These phrases were discovered by examining the email’s underlying HTML source code, which

exposes content intentionally concealed from the recipient's normal view. The presence of multiple, conflicting narratives embedded in hidden code demonstrates that the email was engineered as a modular spam templat. Legitimate commercial emails have no reason to embed concealed language unrelated to the advertised content. This deliberate inclusion of hidden cues evidences scienter and deceptive intent, confirming that the email was not a good-faith communication but a calculated attempt to manipulate recipients through false and misleading representations in violation of Business & Professions Code § 17529.5.

14. The spam was sent from a "spoofed" e-mail address to conceal the identity of the true sender. Indeed, after receiving the e-mail, Plaintiff searched the publicly available WHOIS database to identify the sender via the owner of the domain used in the "From" fields (glowvento4.com). According to the WHOIS database (found at https://lookup.icann.org/en/lookup), the identity of the registrant of the domain glowvento4.com was "REDACTED FOR PRIVACY." (last accessed February 4, 2026).

15. The subject line of the spam – congratulating Plaintiff and advising her that she had been invited to receive a card – was both misleading and literally false. Indeed, Plaintiff clicked on the link in the spam and was eventually directed to the website destinycard.com, with instructions to "apply" for a card. In other words, Plaintiff was deceived into searching for genuine, individualized card offer that did not exist; instead, the spam was part of an evergreen marketing tactic uniformly deployed to induce recipients to engage with Defendant's sales funnel. Plaintiff had not been selected for anything special; rather, Defendant routinely markets its credit cards presented as special offers but are, in fact, part of Defendant's standard sales script. By framing ordinary marketing as individualized and congratulatory, the email falsely implied exclusivity, urgency, and consumer benefit where none exists.

16. The misrepresentation in the subject line was obviously material – the sole purpose of the spam was to deceive the recipient into opening spam that they would have otherwise deleted and searching for an illusory benefit that did not exist.

17. Plaintiff's e-mail address is a "California e-mail address" because Plaintiff opened the account in California and routinely accesses the e-mail address from computers in California. *See* Bus. & Prof. Code § 17529.1(b).

18. The spam was an "Unsolicited Commercial e-mail advertisement" because plaintiff had no pre-existing relationship with Defendant and because the e-mail was initiated for the purpose of advertising the extension of credit. *See* Bus. & Prof. Code § 17529.1(c).

19. Plaintiff never gave "direct consent" to receive commercial e-mail advertisements from Defendant or its marketing agents. Indeed, "direct consent" under the statute requires a unique level of specificity and clarity that must be informed, knowing, and explicit — meaning that consumers must be told clearly that they are agreeing to receive advertising emails from a particular sender, and for what purpose, at the time they provide their email address.

20. The above spam violates Bus. & Prof. Code § 17529.5 in three separate and distinct ways:

a. **Unauthorized Use of a Domain Name in Violation of Section 17529.5(a)(1).** A domain name is the unique Internet address used to identify the origin of an email transmission. It functions as a digital signature and is intended to enable recipients to verify the sender's identity. Upon information and belief, the domain in the spam email described above (glowvento4.com) was neither owned by, registered to, nor affiliated with Defendant, thereby misrepresenting the identity of the sender. Indeed, the use of an obscure domain whose registration information has been redacted from public databases falsely suggests a sender unrelated to the advertiser and conceals Defendant's identity altogether. This disguised the true sender and frustrating Plaintiff's ability to identify who was actually behind the message. This practice constitutes the unauthorized use of domain names and the misrepresentation of sender information prohibited by §

17529.5(a)(1), regardless of whether Defendant's brand name appears elsewhere in the email content.

b. **<u>Misrepresented Header Information In Violation of Section 17529.5(a)(2).</u>** An email header is the portion of an electronic mail message that contains the routing, addressing, and technical information necessary for the message to be transmitted and delivered across the internet. Unlike the visible body of an email, the header records the path the message takes from the sender to the recipient and includes fields such as the "From," "To," "Date," "Subject," and the originating Internet Protocol (IP) address. The header serves as the digital equivalent of a postmark and return address on a physical letter—it discloses who sent the message, the servers through which it traveled, and how it reached the recipient's inbox. The email described above contains forged and misrepresented header information in violation of Business and Professions Code § 17529.5(a)(2) because the "From" addresses and associated domain were spoofed. On information and belief, there is no such e-mail address as v12tl56c@j2h.glowvento4.com), and the use of a nonsensical alphanumeric local part that bears no logical or traceable connection to Defendant falsely suggests that the message originated from an unknown third party.

c. **<u>Deceptive Subject Line and Contents in Violation of Section 17529.5(a)(3).</u>** This section prohibits deceptive subject lines and imposes an affirmative duty of accuracy in the material facts contained in the content of commercial e-mail. The email violates Business and Professions Code § 17529.5(a)(3) because the subject line is deceptively worded to create the false impression that the recipient has been individually selected for a specific, personalized credit offer, when in reality it is nothing more than a mass-market advertising solicitation. By stating, "Congrats, your invitation … is here," the email implies that Plaintiff has already been approved to

receive a credit card with a $700 credit limit, suggesting a preexisting relationship, eligibility determination, or unique opportunity. In truth, however, the message is simply an evergreen marketing tactic sent broadly to consumers, directing recipients to apply for a credit card like any other generic promotion. There is nothing individualized, exclusive, or tailored about the communication—it is not an actual "invitation," but an attempt to induce consumers to click through and submit an application. This kind of subject-line framing is misleading because it trades on false personalization to increase open rates, while obscuring the true purpose of the e-mail: an unsolicited advertisement designed to funnel recipients into a standard credit card application process.

21. Under Business & Professions Code §17529.5(b)(1)(B)(ii), each unlawful email constitutes a separate "incident" for purposes of statutory damages. The statute is structured to treat every deceptive or misleading email as an independent violation because each transmission represents a distinct act of deception and a separate invasion of the recipient's privacy and inbox. The Legislature expressly adopted this "per email" approach to deter mass spamming campaigns, recognizing that spam's harm multiplies with each delivery, regardless of whether the content is identical.

22. Although a plaintiff need not plead or prove actual damages to bring a claim under the statute, Plaintiff has in fact suffered concrete, particularized harm as a result of Defendant's conduct. Plaintiff spent valuable time and attention identifying, reading, and searching for an illusory unique offer that did not exist; searching the WHOIS database to try to find out who sent the e-mail; incurred opportunity costs and lost productivity; and suffered depletion of device and network resources, including storage space, bandwidth usage, and battery life.

23. The unauthorized domain name, misleading header and subject line also invaded Plaintiff's privacy and disrupted the ordinary use and enjoyment of Plaintiff's email account, diminishing its value as a communication tool and necessitating additional

filtering and security precautions. These injuries were directly caused by Defendant's unlawful emails and are redressable by statutory and injunctive relief.

24. Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements. In fact, Defendant actively defies California law.

## IV. CLASS ACTION ALLEGATIONS

25. Plaintiffs bring this action on behalf of all persons similarly situated and seek certification of the following class:

> All persons who received any unsolicited commercial e-mail advertising Defendant's services where such email(s) contained: (1) a falsified, misrepresented, or forged domain name; (2) falsified, misrepresented, or forged header information; or (3) false or misleading subject line or contents in violation of California Business and Professions Code § 17529.5, within the four years preceding the filing of this action.

26. The above-described class of persons shall hereafter be referred to as the "Class." Excluded from the Class are any and all past or present officers, directors, or employees of Defendant, any judge who presides over this action, and any partner or employee of Class Counsel. Plaintiff reserves the right to expand, limit, modify, or amend this class definition, including the addition of one or more subclasses, in connection with a motion for class certification, or at any other time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

27. **Numerosity.** The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but Plaintiff is informed and believes, and thereon, alleges that there are at least 100,000 members of the Class.

28. **Typicality.** Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendant's course of conduct as described in this Complaint.

29. **Adequacy of Representation.** Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and intend to prosecute this action vigorously.

30. **Predominance of Common Questions of Law or Fact.** Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

a. Whether Defendant sent unsolicited commercial e-mail to Class members;

b. Whether the e-mails were sent in violation of Business and Professions Code Section 17529.5.

31. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable.

32. **Ascertainability**. Defendant keeps computerized records of its sales and customers through, among other things, databases storing customer orders, customer order histories, customer profiles, customer loyalty programs, and general marketing programs. Defendant has one or more databases through which a significant majority of members of the Class may be identified and ascertained, and they maintain contact information, including email addresses.

## V. CAUSE OF ACTION

### Violation of Cal. Business & Professions Code § 17529.5

33. Plaintiff received the above unsolicited commercial e-mail at a California e-mail address within one year prior to filing the Complaint at a California e-mail address.

34. As shown above, the spam violated all three provisions of Section 17529.5.

35. Defendant is strictly liable for violation of Section 17529.5 for sending each spam and is liable in the amount of $1,000 per spam per class member.

36. Defendant has not established and implemented, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5 that would justify a reduction in liquidated damages.

37. Plaintiff and every Class member who received any violative e-mail are entitled to $1,000 in liquidated damages per e-mail from Defendant (Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii)), and to recover reasonable attorney's fees and costs (Cal. Bus. & Prof. Code § 17529.5(b)(1)(C)).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff seeks judgment against Defendant as follows:

a. For an order certifying that the action be maintained as a class action, that Plaintiff be designated as class representatives, and that undersigned counsel be designated as class counsel;

b. For all available declaratory, legal, and equitable relief including injunctive relief;

c. For statutory damages of $1,000 per violative e-mail;

d. For punitive damages; and

e. For attorneys' fees and costs as allowed by law.

Dated: February 4, 2026

PACIFIC TRIAL ATTORNEYS, APC

By: *_/s/ Scott J. Ferrell_*
Scott J. Ferrell
Attorneys for Plaintiff and the Proposed Class